# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3327

_____

United States of America,      *
            *
      Plaintiff-Appellee,    *
            *   Appeal from the United States
    v.             *   District Court for the
            *   Southern District of Iowa.
Jose Cortez-Palomino,    *
            *      [PUBLISHED]
      Defendant-Appellant.  *

_____

Submitted: January 12, 2006
Filed:  February 28, 2006

_____

Before WOLLMAN, LAY, and ARNOLD, Circuit Judges.

_____

PER CURIAM.

Jose Cortez-Palomino entered a conditional plea of guilty to possession with intent to distribute 100 kilograms or more of a substance containing marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), after the district court[1] denied his motion to suppress marijuana seized during the search of his pickup truck following a traffic stop.  Cortez-Palomino appeals the denial of his motion to suppress.  We affirm.

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

On November 16, 2004, Iowa State Highway Patrol Trooper Kenneth Haas stopped Cortez-Palomino for speeding on Interstate 80 in Council Bluffs, Iowa. Cortez-Palomino was driving a pickup truck with a bed cover. Trooper Haas testified that as he exited his patrol car and approached the pickup on the passenger side, he observed that the pickup's bed cover had come apart on the side. He testified that the opening was approximately three or four inches wide and ran two feet down the length of the pickup bed. Through this opening, Trooper Haas observed two large bales wrapped in green cellophane. Trooper Haas testified that, based on his training and experience, he immediately recognized the cellophane-wrapped packages as contraband because illegal narcotics are often packaged in this manner. He also noted the strong smell of axle grease, which he testified was used as a masking agent. Trooper Haas commented, for the benefit of his patrol car camera's audio recording, that he observed green cellophane packages in the truck bed that appeared to contain narcotics. Trooper Haas made contact with the driver, Cortez-Palomino, asked him to exit the vehicle and placed him in handcuffs, advising him that he was being detained.

Trooper Haas called for assistance and Trooper Craig Zenor and Trooper C.J. Noelk arrived on the scene. Trooper Haas instructed Troopers Zenor and Noelk to make a passenger side approach and advise him of what they observed. Trooper Noelk testified that he went straight to the passenger compartment and smelled dryer sheets, or a similar masking agent. Trooper Noelk then made a second approach and saw green cellophane bundles through the gap in the pickup bed cover. Trooper Noelk testified that this packaging was consistent with transporting a controlled substance and that he had never seen anything other than drugs packaged in this manner in a vehicle.

Trooper Zenor also testified that he initially looked in the front of the vehicle. He testified that at this time he smelled marijuana.[2] Trooper Zenor testified that on his second approach, he could see green cellophane packaging through the opening in the pickup bed cover, which was consistent with marijuana. Trooper Zenor stated that the scent of marijuana and his observation of the packaging quickly led him to conclude that the pickup bed contained marijuana.

Trooper Haas advised Cortez-Palomino of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). He then asked Cortez-Palomino if there was marijuana in the back of the pickup. Cortez-Palomino stated that he did not know what was in the back of the truck. The troopers opened the tailgate of the pickup and observed pieces of cardboard boxes that covered several large bales of marijuana wrapped in green cellophane.

The truck was transported to the Iowa State Patrol field office, where it was searched and inventoried. This search revealed twenty-nine packages that were wrapped in plastic and covered with grease. The packages contained 445.5 pounds of marijuana. Cortez-Palomino was then advised, in Spanish, of his *Miranda* rights. In a subsequent conversation, Cortez-Palomino made a number of admissions indicating that he had been paid to drive a vehicle containing a load of an unknown substance across the country.

After he was charged with possession with intent to distribute marijuana, Cortez-Palomino filed a motion to suppress the evidence. The district court denied the motion on the grounds that the warrantless search of Cortez-Palomino's vehicle

---

[2]The district court did not consider this factor in reaching its decision regarding the existence of probable cause because it concluded that the value of this testimony was diminished by the other two officers' testimony that they smelled axle grease and dryer sheets.

was supported by probable cause. Palomino-Cortez entered a conditional guilty plea, and now appeals the denial of the motion to suppress.

## II.

We review the district court's conclusions of law de novo and its findings of fact for clear error.[3] *United States v. Williams*, 429 F.3d 767, 771 (8th Cir. 2005). Any traffic violation, however minor, provides probable cause for a traffic stop. *United States v. Barragan*, 379 F.3d 524, 528 (8th Cir. 2004). There is no question that Trooper Haas had probable cause to initiate the traffic stop when he observed Cortez-Palomino's vehicle exceeding the speed limit. The issue in this case is whether the troopers had probable cause to search the pickup driven by Cortez-Palomino.

The Fourth Amendment protects an individual's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. Searches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions. *United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004). Under the automobile exception, officers may search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity. *Id.* Probable cause exists "where, in the totality of the circumstances, there is a fair

---

[3]While the district court related the state troopers' testimony in its decision, it failed to explicitly make specific findings of fact, except to note that it chose not to credit Trooper Zenor's testimony that he smelled marijuana. However, the district court did state the troopers' observations gave rise to probable cause that Cortez-Palomino was transporting illegal narcotics. Therefore, we can conclude the district court found the troopers' testimony and recitation of their observations to be credible. Because the district court's legal basis for denying the motion to suppress is stated on the record, and because a reasonable view of the evidence can support this decision, a remand is unnecessary. *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc).

probability that contraband or evidence of a crime will be found in a particular place." *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005).

In this case, the troopers observed large packages wrapped in green cellophane. Trooper Haas detected the strong odor of axle grease, which he testified was used as a masking agent. Trooper Noelk smelled dryer sheets, another common masking agent, when he approached the passenger compartment of the pickup. All three troopers testified that their experience led them to believe that the green cellophane packages contained illegal narcotics. In determining probable cause, law enforcement officers may draw inferences based upon their experience. *Ornelas v. United States*, 517 U.S. 690, 700 (1996); *United States v. Caves*, 890 F.2d 87, 90 (8th Cir. 1989). From their vantage point, the troopers immediately recognized the green cellophane wrapped packages as probable contraband. This provided probable cause for the officers to lower the tailgate and search the pickup without a warrant. *See United States v. Barnes*, 374 F.3d 601, 605 (8th Cir. 2004); *United States v. Van Zee*, 380 F.3d 342, 343-44 (8th Cir. 2004); *see also United States v. Bugarin-Casas*, 484 F.2d 853, 854 (9th Cir. 1973); *cf. Texas v. Brown*, 460 U.S. 730, 742-43 (1983) (officer's observation of a balloon tied in a manner consistent with trafficking illegal narcotics provided probable cause under the plain view doctrine).

The observations of the troopers created a fair probability that contraband would be found in the truck bed. Therefore, the warrantless search of the pickup truck was supported by probable cause and the district court did not err in denying the motion to suppress.

III.

For the foregoing reasons, we affirm the decision of the district court.

_____