# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1317

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Scott Goodwin-Bey, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 22, 2009
Filed: October 28, 2009

_____

Before MELLOY, BEAM and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Scott Goodwin-Bey entered a conditional guilty plea to the charge of being a felon in possession of a firearm, reserving the right to appeal the denial of his motion to suppress. We affirm.

## I.      BACKGROUND

The facts of this case are not in dispute. On April 3, 2007, Officer Daniel Rankey stopped a white Mitsubishi Galant, which Goodwin-Bey was driving, for running a red light. While Officer Rankey attempted to identify the vehicle's four

occupants, he received a report of an earlier incident in which occupants of a white Mitsubishi Galant had displayed a firearm. A short time later, Officer Mark Foos arrived to further investigate that incident.

During the course of the stop, Officer Rankey learned of an outstanding warrant for a traffic violation issued for the front passenger, Lawrence Freeman. Officer Greg Sly then arrested and handcuffed Freeman. The officers conducted protective pat-downs of the vehicle's other three occupants, including Goodwin-Bey.

After Freeman's arrest, Officer Rankey searched the vehicle. Finding the glove box locked, Officer Rankey took Goodwin-Bey's keys to continue the search, over Goodwin-Bey's objection. Inside the glove box, Officer Rankey found a Derringer handgun, which he seized. Although Goodwin-Bey admitted that he was a convicted felon, Officer Rankey did not arrest Goodwin-Bey at the time, instead advising Goodwin-Bey that a detective would contact him for a follow-up investigation. Freeman was transported to the county jail, and Officer Rankey allowed Goodwin-Bey and the other two passengers to leave.

A grand jury later indicted Goodwin-Bey on the charge of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g). Goodwin-Bey moved to suppress the gun, arguing that Officer Rankey's search of the vehicle violated the Fourth Amendment. The magistrate judge[1] issued a report and recommendation proposing that Goodwin-Bey's motion be denied, which the district court[2] adopted in full. The district court then accepted Goodwin-Bey's conditional guilty plea and sentenced him to 70 months' imprisonment. Goodwin-Bey now appeals the denial of

---

[1]The Honorable James C. England, Chief United States Magistrate Judge for the Western District of Missouri.

[2]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

his motion to suppress, arguing first that the search incident to Freeman's arrest was impermissible under *Arizona v. Gant*, 556 U.S. ---, 129 S. Ct. 1710 (2009), because the arrest scene was secure. Second, he argues that the district court erred in finding probable cause sufficient to justify the search.

## II.    DISCUSSION

"We examine the factual findings underlying the district court's denial of the motion to suppress for clear error and review de novo the ultimate question of whether the Fourth Amendment has been violated." *United States v. Williams*, 577 F.3d 878, 880 (8th Cir. 2009) (quoting *United States v. Walsh*, 299 F.3d 729, 730 (8th Cir. 2002)). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Horton v. California*, 496 U.S. 128, 133 n.4 (1990) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Two exceptions are relevant to this case: the search incident to arrest exception described in *Chimel v. California*, 395 U.S. 752, 763 (1969), and the reasonable suspicion of dangerousness exception articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). These exceptions apply to searches of vehicles under *New York v. Belton*, 453 U.S. 454 (1981), and *Michigan v. Long*, 463 U.S. 1032 (1983), respectively.

After lawfully arresting a suspect, officers may reasonably search "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." *Chimel*, 395 U.S. at 763. When the arrestee recently occupied an automobile, the reaching area includes "the passenger compartment of that automobile." *Belton*, 453 U.S. at 460. The "reaching area" rule serves the dual purposes of "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Gant*, 129 S. Ct. at 1716. In *Gant*, the Supreme Court recently held that where those two concerns are not present, the Fourth Amendment does not

permit a vehicle search incident to an arrest. *Id.* Where those concerns are present, however, *Belton* continues to permit the search as an exception to the warrant requirement. *Id.* at 1716-17. The Government argues that because Goodwin-Bey and the other passengers were not secured, unlike the bystanders in *Gant*, officer safety concerns justified the search. Goodwin-Bey argues that the scene was in fact secure, since the other occupants had been patted down and did not outnumber the officers on the scene.

The facts here are similar to those of our recent decision in *United States v. Davis*, 569 F.3d 813 (8th Cir. 2009). As here, *Davis* involved three unsecured passengers and one vehicle occupant who had been arrested. The court found that these unsecured passengers and the presence of alcohol and marijuana at the scene gave rise to "textbook examples of 'the safety and evidentiary justifications underlying *Chimel*'s reaching-distance rule.'" *Id.* at 817 (quoting *Gant*, 129 S. Ct. at 1714). We held that the presence of *Chimel*'s concerns distinguished *Gant*, and that the search incident to arrest exception thus justified the search. *Id.* Those same safety concerns were present to an even greater degree here.[3] Officer Rankey received a report that occupants of a vehicle of the same make, model and color as the vehicle he stopped had displayed a firearm during an earlier incident.[4] While the Government does not argue that the officers were concerned about evidence destruction or

---

[3]That the gun was found in a locked glove box does not eliminate the potential danger to the officers. *See United States v. Palmer*, 360 F.3d 1243, 1247 (10th Cir. 2004); *United States v. Woody*, 55 F.3d 1257, 1269 (7th Cir. 1995).

[4]At oral argument, Goodwin-Bey suggested for the first time that this earlier incident might have been so remote in time as to render the report stale. Regardless of whether this argument was waived for failure to raise it in his opening brief, *see United States v. Mitchell*, 31 F.3d 628, 633 n.3 (8th Cir. 1994), Goodwin-Bey's concession that the officers had a reasonable suspicion to perform a protective pat-down, Appellant Br. 18, disposes of the claim. Because Goodwin-Bey admits that the report of a displayed firearm was sufficiently fresh to justify the pat-down, it follows that the report implicates *Chimel*'s safety concerns.

concealment,[5] our holding in *Davis* dictates that the earlier incident report, along with the number of the vehicle's occupants, sufficiently implicated officer safety concerns to justify a search incident to arrest under *Belton*.

Even if the search incident to arrest exception did not apply, these same concerns for officer safety would justify the search under *Michigan v. Long*'s reasonable suspicion of dangerousness exception. "[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief . . . that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). In reexamining the search incident to arrest exception to the warrant requirement, *Gant* left this exception untouched. *Gant*, 129 S. Ct. at 1721.

Although neither Officer Rankey's report nor his testimony mention any suspicion that Goodwin-Bey or the other occupants might pose a danger, we evaluate whether a reasonable suspicion of dangerousness existed under an objective, not a subjective, standard. *United States v. Plummer*, 409 F.3d 906, 909 (8th Cir. 2005) (noting that the circuits are split on this issue). The report of the earlier incident involving occupants of a car of the same make, model and color displaying a weapon provided a reasonable suspicion that there was a weapon in the vehicle that the unsecured occupants could immediately access. Indeed, Goodwin-Bey admits as much in conceding that the officers had a reasonable suspicion of dangerousness sufficient to justify a protective pat-down of Goodwin-Bey. Appellant Br. 18. All of the occupants were outside the vehicle at the time of the search, but "[a]bsent an

---

[5]Neither *Chimel* nor *Gant* require both safety and evidentiary concerns to exist to justify a search incident to arrest. Either concern standing alone may trigger the exception to the warrant requirement. *See Gant* 129 S. Ct. at 1716 (noting that "the search-incident-to-arrest exception . . . does not apply" when "*both* justifications . . . are absent" (emphasis added)).

arrest," they "would have been free to reenter the [vehicle] and pose a danger to the officers." *United States v. Peoples*, 925 F.2d 1082, 1087 (8th Cir. 1991). Thus, we hold that a reasonably prudent officer on the scene would be warranted in believing that Goodwin-Bey and his unsecured passengers were "'dangerous' and might access the vehicle to 'gain immediate control of weapons.'" *Gant*, 129 S. Ct. at 1721 (quoting *Long*, 463 U.S. at 1049). Therefore, even if *Belton*'s search incident to arrest exception to the warrant requirement did not apply, Officer Rankey's search was permissible under *Michigan v. Long*'s reasonable suspicion of dangerousness exception.

As a result, there is no need to reach Goodwin-Bey's argument that Officer Rankey lacked probable cause to search the vehicle under the "automobile exception." *See Davis*, 569 F.3d at 817 (articulating the test for applying the automobile exception). Because the gun was found in an "area[] in which a weapon may be placed or hidden," *Long*, 463 U.S. at 1049, only reasonable suspicion of dangerousness, not probable cause, was necessary. While the district court found probable cause to justify the search under the automobile exception, "we may affirm the judgment of the district court on any basis supported by the record." *United States v. Siwek*, 453 F.3d 1079, 1084 (8th Cir. 2006). Therefore, we need not reach Goodwin-Bey's argument regarding probable cause because the vehicle search was permissible both as a search incident to Freeman's arrest and as a protective search in response to a reasonable suspicion of danger.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Goodwin-Bey's motion to suppress.

_____